**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Golden West Holdings Trust, et al., ) | No. CV-05-2237-PHX-SMM (Lead) |
| ) | No. CV-05-2238-PHX-JAT (Consol.) |
| Plaintiffs, ) | No. CV-05-2239-PHX-JAT (Consol.) |
| ) | |
| v. ) | **ORDER** |
| ) | |
| United States of America, and Internal ) | |
| Revenue Service, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is the Government's Motion for Summary Judgment (Dkt. 66) filed on September 26, 2008 against Plaintiffs Golden West Holdings Trust ("Golden West"), Tri-Star Real Estate Investment Trust ("Tri-Star"), and William Wadman. Only Plaintiff Wadman responded[1] (Dkt. 96). Intervenor Plaintiff Wachovia Bank NA ("Wachovia") also responded (Dkt. 78). The Government replied (Dkts. 89, 99), and the matter is now fully briefed. Also before the Court is the Government's Motion for Reconsideration of Order Granting Intervention (Dkt. 74), to which Wachovia responded (Dkt. 93) and the Government replied (Dkt. 94). Additionally, Wadman filed a "Motion to Enjoin [sic]

---

[1] Despite multiple extensions, Plaintiffs did not respond to the motion for summary judgment within the required time frame. The Court ordered Plaintiffs to show cause (Dkt. 90). At the show cause hearing, the Court ordered Plaintiffs to respond by February 27, 2009 (Dkt. 92). Only Wadman responded (Dkt. 96).

Wachovia Bank's Response to the Government's Motion for Summary Judgment" (Dkt. 95), which the Court construes as a motion to join Wachovia's response and will grant.

Based on the procedural events thus far, the parties appear to have been preparing for trial. Under 26 U.S.C. § 7429, though, this action is before the Court for a summary determination. The Court will use the documentation provided with the motion for summary judgment as the basis for its decision. See Guillaume v. C.I.R., 290 F. Supp. 2d 1349, 1352 n. 4 (S.D. Fla. 2003). However, the Court will not rule upon the motion for summary judgment because the entry of judgment is inappropriate.[2] See id. (citing 26 U.S.C. § 7429(b)). For reasons discussed below, the Court determines the jeopardy assessment reasonable under the circumstances. Therefore, the Court will dismiss Plaintiffs' Amended Complaint and deny all pending motions as moot. See id. at 1356.

## BACKGROUND

This is a dispute over the Internal Revenue Service's ("IRS") seizure of cash and property worth more than $1.5 million (Dkt. 21, Am. Comp. ¶¶ 7-9). In April 2005, IRS agents executed a jeopardy levy against Wadman's property (Dkt. 66, Def.'s Statement of Facts ("DSOF") ¶ 48). According to the Government, the IRS had recently discovered that Wadman engaged in a fraudulent federal tax refund scheme using Golden West and Tri-Star (Id. ¶¶ 10-11, 22-26). Despite receiving little or no income, Wadman obtained individual tax refunds in excess of $1.2 million for the 2001 through 2004 tax years (Id. ¶¶ 22-26). Wadman also obtained nearly as much in refunds for Golden West and Tri-Star (Id. ¶¶ 11, 17). Before executing the jeopardy levy, the IRS froze $1.6 million of false refund claims for Golden West and Tri-Star, which they allege led Wadman to flee Florida and create new

---

[2] The parties requested oral argument in connection with the motion for summary judgment and motion for reconsideration. The parties have had the opportunity to submit evidence and briefing. Furthermore, as noted, the Court will not rule upon the motion for summary judgment. The Court finds this summary proceeding suitable for determination without oral argument, and therefore, the parties' requests are denied.

nominees (Id. ¶ 21).  Also at the time of the jeopardy levy execution, Wadman had listed his Florida properties for sale (Id. ¶¶ 34, 38).

Wadman allegedly concealed his assets from IRS collection by commingling funds with and taking title in the name of the entities, Golden West and Tri-Star (Id. ¶¶ 45-46). Wadman also used these entities to advance his fraudulent refund scheme (Id. ¶¶ 2, 45). Under his alleged fraudulent tax refund scheme, Wadman submitted false income tax returns with numerous fake Forms 1099 (Id. ¶¶ 10-12).  Each of the Forms 1099 listed substantial income purportedly paid by a publicly-traded corporation to Wadman, Golden West, or Tri-Star and falsely claimed that 30% of the income was withheld as federal income tax (Id. ¶¶ 12-13).  In fact, Wadman and his companies had not performed any work for the companies listed on the Forms 1099 (Id. ¶¶ 15-16).  The public corporations had not paid any compensation to Wadman or his companies, had not paid any taxes to the IRS, and had not even heard of Wadman or his companies (Id.).  Furthermore, the fraudulently obtained refunds were nearly the only deposits in the bank accounts of Wadman and his companies (Id. ¶¶ 18-20).

Plaintiffs Wadman, Golden West, and Tri-Star filed their complaints against the Government on July 27, 2005 (Dkt. 1 in CV 05-2237, 05-2238, 05-2239).  The Court consolidated the three cases on February 28, 2006, with CV 05-2237 as the lead case (Dkt. 18).  Plaintiffs then filed an Amended Complaint (Dkt. 21).  Plaintiffs challenge the levies as void due to the IRS's failure: (1) to mail a statutory Notice of Deficiency to Plaintiffs as required by 26 U.S.C. § 6212 within 60 days of making the jeopardy assessment, and (2) to provide a Written Statement of the information relied upon in making the assessment within 5 days as required by 26 U.S.C. § 7429  (Id. ¶¶ 11-16).  Plaintiffs further assert that the jeopardy assessments and levies were unreasonable under 26 U.S.C. § 7429 (Id. ¶ 10).

Since filing the original complaint, Plaintiffs' counsel has withdrawn *four* times (Dkt. 3, Order signed August 5, 2005; Dkt. 14, Order signed January 4, 2006; Dkt. 33, Order signed August 1, 2006; Dkt. 88, Order signed December 1, 2008).  The most recent attorneys of record cited the "failure of Plaintiff William Wadman to fulfill his obligation to assist in

1 preparation of the case and irreconcilable conflicts of interest" as factors requiring them to
2 withdraw (Dkt. 87).  Currently, Plaintiffs are unrepresented by counsel.

3 On June 13, 2006, Wachovia moved to intervene.  On April 13, 2005, the IRS served
4 a Notice of Levy on Wachovia regarding Wadman's accounts at their bank (Dkt. 36,
5 Intervenor Comp. ¶¶ 7-8).  According to Wachovia, Wadman withdrew funds from his bank
6 accounts before the bank could secure them (Id. ¶ 11).  After the IRS sent a Final Demand
7 for Payment on July 11, 2005, Wachovia paid the IRS $436,628.97 from its own funds due
8 to its liability under 26 U.S.C. § 6332 (Id. ¶¶ 12-15).  Wachovia asserts that if the levies
9 issued against Wadman are found void, then it is entitled to a refund of its payment to the
10 IRS.  After applying the test for intervention as a matter of right and United States v.
11 Williams, 514 U.S. 527 (1995), the Court granted Wachovia's Motion to Intervene (Dkt. 34,
12 Order signed November 2, 2006).

13 On September 26, 2008, the Government moved for summary judgment (Dkt. 66).
14 Then on October 17, 2008, the Government moved for reconsideration of this Court's order
15 allowing Wachovia to intervene (Dkt. 74).

## DISCUSSION

17 First, the Government contends that the IRS seized the property without notice
18 because the collection of Wadman's tax liabilities was in jeopardy.  As the IRS agents had
19 a good faith belief that the tax collection was in jeopardy, the Government asserts the
20 jeopardy levy executed against Wadman was reasonable under the circumstances.  Second,
21 the Government claims that Plaintiffs Golden West and Tri-Star are nominees or alter egos
22 of Wadman and lack standing to file wrongful levy actions.  Therefore, the Government
23 contends that it is entitled to judgment as a matter of law.

24 **I.      Jeopardy Assessment**

25 Ordinarily, the Commissioner of Internal Revenue must send notice of a proposed
26 deficiency to the taxpayer and wait 30 days before imposing an assessment or levy.  26
27 U.S.C. § 7429(a)(1)(A).  When the collection of taxes may be jeopardized by delay, though,
28 the Internal Revenue Code authorizes immediate assessment of taxes without prior notice and

summary action to collect the assessed taxes. 26 U.S.C. §§ 6861 (jeopardy assessment) and 6851 (termination assessment).[3] The IRS regulations provide for a jeopardy assessment when a taxpayer "designs to do an act which would tend to prejudice proceedings to collect the income tax for such year or years unless such proceedings are brought without delay." 26 C.F.R. § 1.6851-1(a)(1). "To ameliorate the hardships that may result from jeopardy assessments," the taxpayer may obtain summary review by a federal district court independent from an administrative review. Mesher v. United States, 736 F. Supp. 233, 235 (D. Or. 1990) (citing 26 U.S.C. § 7429(b)).

A jeopardy review is an unappealable summary proceeding, and the scope of the jeopardy determination under section 7429 is limited to two questions: 1) whether the jeopardy assessment was reasonable under the circumstances; and 2) whether the amount assessed was appropriate. Id.; Estate of Merchant v. C.I.R., 947 F.2d 1390, 1394 (9th Cir. 1991) (citing 26 U.S.C. § 7429(f)). A jeopardy proceeding does not establish a taxpayer's ultimate liability for the taxes at issue, though. Mesher, 736 F. Supp. at 235. The taxpayer can challenge the ultimate tax liability in any proceeding brought at a later date in a tax court. See id.; see also Estate of Merchant, 947 F.2d at 1394.

Here, only the reasonableness of the jeopardy assessment is at issue. Plaintiffs do not challenge the appropriateness of the amount of the jeopardy assessment.

**A.   Subject Matter Jurisdiction**

As a preliminary matter, although the parties did not raise the issue, the Court should address whether it has subject matter jurisdiction over this action. The statute requires a determination of the proceeding within twenty days after commencement of the action. 26 U.S.C. § 7429(b)(3). The question is whether the court is deprived of subject matter jurisdiction because a plaintiff did not enforce his statutory right to a decision within twenty

---

[3] A jeopardy assessment is made for the tax year that has ended and for which the due date of filing return has passed, whereas a termination assessment is made for the tax year that either has not ended or for which the due date for filing a tax return has not yet passed. For convenience, the Court refers to a jeopardy assessment as the standards are the same.

- 5 -

days after commencing a proceeding regarding the reasonableness of the IRS action. In Guillaume v. Commissioner, a district court applied both the Seventh and Eleventh Circuits' position on subject matter jurisdiction. 290 F. Supp. 2d at 1352 n. 3 (citing United States v. Doyle, 660 F.2d 277 (7th Cir. 1981); Meadows v. United States, 665 F.2d 1009, 1012 (11th Cir. 1982)). Those circuits held that when the taxpayer failed to notify the district court of the twenty-day limit and "show[ed] minimal concern for his section 7429 right," the court may address the merits of the assessment. Id. Plaintiffs initiated this action on July 27, 2005, and nearly four years have passed since that date. Plaintiffs failed to notify the Court of the twenty-day limit and have shown minimal concern for their section 7429 right. Applying the reasoning in Guillaume, the Court finds it has jurisdiction and will address the reasonableness of the jeopardy assessment.

### B. Reasonableness of Jeopardy Assessment

The burden of proving the reasonableness of the jeopardy assessment is upon the Government. 26 U.S.C. § 7429(g)(1). The court considers three conditions when determining whether a jeopardy assessment is reasonable: (1) the taxpayer is or appears to be planning to quickly depart from the United States or to conceal himself; (2) the taxpayer is or appears to be designing to place his property beyond the reach of the Government either by removing it from the United States or by concealing it, transferring it to other persons, or dissipating it; or (3) the taxpayer's financial solvency appears to be imperiled. Nolan v. United States, 539 F. Supp. 788, 790 (D. Ariz. 1982) (citing S. Rep. No. 94-938, at 365 n.6 (1976)); 26 C.F.R. § 1.6851-1(a)(1). If any one of the above three conditions exists, the making of a jeopardy assessment is reasonable. See Nolan, 539 F. Supp. at 790. In addition, the court typically considers the following factors:

(1) Possession of, or dealing in, large amounts of cash.
(2) Possession of narcotics or evidence of other illegal activities.
(3) Prior tax returns reporting little or no income despite the taxpayer's possession of large amounts of cash.
(4) Dissipation of assets through forfeiture, expenditures for attorneys' fees, appearance bonds, and other expenses.

  (5) The lack of assets from which potential tax liability can be collected.
  (6) Use of aliases, which makes it more difficult to locate either the taxpayer or any of his assets.
  (7) Failure to supply appropriate financial information when requested.
  (8) Multiple addresses, making it harder to find the taxpayer.

Mesher, 736 F. Supp. at 235-36 (citations omitted). Furthermore, courts have found jeopardy assessments reasonable under specific circumstances. Guillaume, 290 F. Supp. 2d at 1353. In particular, courts have found "involvement in illegal activity" and "erratic fiscal behavior" as sufficient to satisfy reasonableness. Id. at 1353-54 (citations omitted).

  When reviewing the assessment, the court may take into account information available to the Commissioner at the time of assessment, as well as any other information bearing on the issues. Id. at 1353; Haskin v. United States, 444 F. Supp. 299, 304 (C.D. Cal. 1977) (citing S. Rep. No. 94-938, at 364). Furthermore, because this is a summary proceeding, "the court is entitled to rely on evidence that might otherwise be inadmissible at trial on the merits." Magluta v. United States, 952 F. Supp. 798, 801 (S.D. Fla. 1996) (citing Harvey v. United States, 730 F. Supp. 1097, 1104 (S.D. Fla. 1990)).

  The court's review is "like a preliminary examination for probable cause in a criminal proceeding, but the standard of review differs." Nolan, 539 F. Supp. at 790 (internal citation omitted). "Reasonable and appropriate under the circumstances is a standard 'something more than not arbitrary or capricious and something less than supported by substantial evidence.'" Id. (quoting Loretto v. United States, 440 F. Supp. 1168, 1172 (E.D. Pa. 1977). "In order to establish that the making of a jeopardy assessment is reasonable under the circumstances, the [IRS] need only establish that the taxpayer's circumstances *appear* to be jeopardizing collection of a tax – not whether they definitely do so." Guillaume, 290 F. Supp. 2d at 1354 (emphasis in original) (internal citations omitted).

  Here, the Government puts forth evidence that it believed Wadman perpetrated a massive fraudulent tax refund scheme, and he was about to conceal himself or his property. Wadman allegedly filed false income tax returns for the years 2001 through 2004 (DSOF ¶

22-26). Wadman had been expecting tax refunds for the year ending December 31, 2004, but the IRS intercepted and froze them (Dkt. 66, Decl. of Karen Bloxham ¶ 10). Shortly before the IRS issued the jeopardy levies, Wadman telephoned the IRS to inquire about the status of the refunds (Id.). Therefore, Wadman may have been alerted to the fact that the Government was about to uncover his tax fraud (DSOF ¶ 21). At the time of the seizure, Wadman had listed his Florida real properties for sale (Id. ¶¶ 34, 38). Beginning on or about April 12, 2005, the Government began a seizure of Plaintiff Wadman's property (Am. Compl. ¶ 7). Soon after the IRS seized his assets, Wadman left Florida and moved to Arizona (Dkt. 66, 8:25-27). Wadman then used other nominee entities, Atlantic Industries Corporation ("Atlantic") and Metropolitan Partners Southwest, LLP ("Metropolitan"), in order to allegedly conceal his fraudulently obtained money (DSOF ¶¶ 55-59). Wadman's behavior could have led the Government to believe either he was planning to quickly depart from the United States or conceal himself, or he was designing to place his property beyond the reach of the Government or conceal it. See Nolan, 539 F. Supp. at 790. Therefore, at least two conditions exist that make the assessment reasonable under the circumstances.

Additionally, other factors justify the assessment. By moving from Florida to Arizona, Wadman used multiple addresses and made it harder for the Government to find him. See Mesher, 736 F. Supp. at 236. Wadman also used multiple aliases, which made it more difficult for the Government either to locate him or any of his assets. See id. IRS records indicate that under a Social Security number ending with 6742, an individual filed income tax returns from 1990-1992 under the name of Gary A. Emerson, from 1993-1997 under the name of Sean G. Black, and from 1998-2004 under the name of William G. Wadman, V (Dkt. 66, Decl. of Calvin Byrd ¶¶ 14-16).

Wadman explains one of his name changes, but he does not explain the other. In 1995, Wadman admitted to presenting false statements to financial institutions, and he pled guilty to four counts of bank fraud (Dkt. 66, Ex. 9 to Decl. of G. Patrick Jennings). After he completed his sentences in 1997, he began working as a controller for a company called G.B.

Data Systems, Inc. In March 2000, he changed his name from Gary Alan Emerson to William Wadman, V (Dkt. 97, Pla.'s Responsive Statement of Facts ("PRSOF") ¶ 5). Wadman changed his name in violation of his probation terms (Dkt. 66, Ex. 9 to Decl. of G. Patrick Jennings). Wadman alleges that he changed his name under seal because he acted as an undercover agent for the IRS's criminal investigation into G.B. Data Systems for tax violations and money-laundering (PRSOF ¶ 5). Around the same time as his name change, though, Wadman also departed from the jurisdiction in violation of his probation terms (Id. ¶ 6). These violations led to the revocation of his probation. Furthermore, although Wadman's conviction occurred in 1995, it involved the crime of dishonesty. Wadman's multiple addresses, multiples aliases, and criminal history, including a departure from a jurisdiction in violation of probation terms, are all factors that justify the IRS's action. See Mesher, 736 F. Supp. at 235-36.

Importantly, the nature of Plaintiffs' alleged tax fraud scheme itself leads to a finding that the jeopardy assessment was reasonable under the circumstances. Wadman allegedly fraudulently obtained tax refunds in excess of $1.2 million for the 2001 through 2004 tax years (DSOF ¶¶ 10). The fraudulently obtained refunds were nearly the only deposits in the bank accounts of Wadman and his companies (Id. ¶¶ 18-20). Under the scheme, Wadman submitted false income tax returns with numerous fake Forms 1099 (Id. ¶¶ 10-12). Each of the fake Forms 1099 listed substantial income purportedly paid by a publicly-traded corporation to Wadman, Golden West, or Tri-Star and falsely claimed that 30% of the income was withheld as federal income tax (Id. ¶¶ 12-13).

An IRS investigative analyst from the Utah Fraud Detection Center, Karen Bloxham, became suspicious of the Forms 1099 because although they came from many different companies, the forms were similar in font and format (Dkt. 66, Decl. of Karen Bloxham ¶ 5). In Ms. Bloxham's experience, "different companies submit Forms 1099 that differ in font and format" (Id.). Ms. Bloxham specifically contacted each of the companies listed on the Forms 1099 and took detailed, accurate notes of her telephone conversation with each

1  company (Id. ¶ 6). None of the companies could confirm that Wadman and his companies
2  performed any work for them (Id.). The companies did not have the Social Security numbers
3  or employer identification numbers (EIN) for Wadman, Golden West, or Tri-Star in their
4  records (Id.). None of the companies withheld any federal income tax for Wadman, Golden
5  West, or Tri-Star (Id. ¶ 7). The IRS alleges that Wadman's "use of publicly-traded
6  corporations made it more difficult for the IRS to discover the fraud given the sheer volume
7  of payments made each year by such entities" (Dkt. 66, 2 n. 1). Indeed, the companies listed
8  on the Forms 1099 are large corporations, including America West Airlines, Inc., AOL Time
9  Warner, Inc., Coors Brewing Company, Dell Computer Marketing LP, General Mills
10 Operations, Inc., Mercedez Benz, Sony Americas Holding Inc., Tyco International (US) Inc.,
11 Universal Studios, etc. (Dkt. 66, Exs. to Decl. of Karen Bloxham).

12         Wadman alleges that he has no personal knowledge of the 1099 forms and tax returns
13 for himself or the entities (PRSOF ¶ 3). Furthermore, he contends that financial
14 professionals and tax attorneys either reviewed or completed all of the returns (Id. ¶¶ 10-14,
15 17, 22-25, 27). A law firm titled "Hochman, Salkin, Deroy, Rettig" allegedly prepared
16 Wadman's 2003 and 2004 tax returns, Golden West's 2003 and 2004 tax returns, and Tri-
17 Star's 2003 tax returns. To refute this allegation, the Government presents the affidavit of
18 Avram Salkin, Esq. (Dkt. 66, Decl. of Avram Salkin ¶ 1). Mr. Salkin is the sole shareholder
19 of the law firm, Hochman Salkin Rettig Toscher & Perez, P.C., which practices in the field
20 of taxation, among other areas (Id.). However, Mr. Salkin avows that his law firm has no
21 record of Wadman, Golden West, or Tri-Star ever being clients (Id. ¶ 4). Although Wadman
22 was a former client under the prior alias, Gary A. Emerson, the firm's billing records for
23 Emerson do not reflect any activity after March 2001 (Id. ¶ 10). Furthermore, an attorney
24 with Mr. Salkin's firm, Nathan Hochman, only represented Emerson as criminal defense
25 counsel for the previous bank fraud charges (Dkt. 66, Ex. 9 to Decl. of G. Patrick Jennings;
26 Dkt. 99, Decl. of Nathan Hochman ¶ 2). Mr. Salkin states that his law firm did not prepare
27 Wadman's, Golden West's, or Tri-Star's tax returns (Dkt. 66, Decl. of Avram Salkin ¶ 3).
28

1  Furthermore, the law firm generally does not prepare returns for clients (Id. ¶ 6). All of the
2  attorneys currently employed by the law firm, who were employed between 2003 and 2005,
3  have stated that the signatures on the tax returns are not theirs (Id. ¶ 5). Furthermore, the
4  EIN and the name of the firm listed on the tax returns are very similar to, but are not, the
5  correct ones for Mr. Salkin's firm (Id. ¶¶ 7, 8). Finally, the law firm does not use the titles
6  listed on the tax returns (Id. ¶ 9). Therefore, the Government has shown that Wadman and
7  his entities likely submitted fraudulent Forms 1099 and tax returns.

8  Although the Government must only show "something more than not arbitrary or
9  capricious and something less than supported by substantial evidence," the Government has
10 put forth substantial information that Wadman engaged in a massive fraud. See Nolan, 539
11 F. Supp. at 790. Plaintiffs involvement in illegal activity itself satisfies the requirements of
12 reasonableness. See Guillaume, 290 F. Supp. 2d at 1353-54.

13 Finally, it is worth noting the reason behind Wachovia's intervention in this action.
14 On April 13, 2005, the IRS served a Notice of Levy on Wachovia regarding Wadman's
15 accounts at the bank (Intervenor Comp. ¶¶ 7-8). However, Wadman withdrew money in his
16 bank accounts before Wachovia could secure them (Id. ¶ 11). After the IRS sent Wachovia
17 a Final Demand for Payment on July 11, 2005, Wachovia had to pay the IRS $436,628.97
18 from its own funds under the law (Id. ¶¶ 12-15). Wadman acted swiftly in taking out his
19 Wachovia bank account money – nearly half of a million dollars. This erratic fiscal behavior
20 in itself satisfies the conditions for finding the IRS's action reasonable under the
21 circumstances. See Guillaume, 290 F. Supp. 2d at 1354. Unlike Wachovia, the Government
22 acted faster than Wadman. If the Government had not acted quickly, the tax collection very
23 well could have been jeopardized by delay.
24
25 Plaintiffs and Wachovia do not specifically deny the allegations, but they object to the
26 Government's evidence as hearsay. As noted, though, the nature of this summary proceeding
27 allows the Court "to rely on evidence that might otherwise be inadmissible at trial on the
28 merits." Magluta, 952 F. Supp. at 801. Therefore, the Court may consider the hearsay

1    evidence from the IRS agents. Additionally, the Court may consider information both
2    available at the time of the assessment and which has later come to light. See Guillaume, 290
3    F. Supp. 2d at 1353; Haskin, 444 F. Supp. at 304. As such, the Court has properly
4    considered all of the information bearing on the issues. See id.

5    Plaintiffs and Wachovia also argue that no court has determined Wadman procured
6    his refunds by fraud. Wadman devotes much of his facts in opposition to the motion for
7    summary judgment to show that his business dealings were legitimate. Wadman alleges that
8    his companies are owned or affiliated with foreign companies in New Zealand, Australia, and
9    London, England (Dkt. 98, Pla.'s Statement of Facts ("PSOF") ¶¶ 1-3; PRSOF ¶ 2).
10   Wadman further alleges that the overseas locations conducted all major operations (PSOF
11   ¶ 3). To bolster his credibility, Wadman submits award certificates, society memberships,
12   and charity letters[4] demonstrating his legitimate business dealings since his prior conviction
13   (PSOF ¶ 5). The Government replies and produces evidence that Wadman spins a "fanciful
14   tale of multiple foreign jurisdictions," involving yet more made-up addresses, persons, and
15   companies (Dkt. 99). Even if none of the tax fraud allegations are actually true, though, the
16   Court is only concerned with whether the jeopardy assessment was reasonable under the
17   circumstances. In essence, the Court only determines whether the tax collection *appeared*
18   to be in jeopardy. See Guillaume, 290 F. Supp. 2d at 1354. Given the information available
19   at and since the time of the assessment, the Court finds that the collection of taxes appeared
20   to be in jeopardy and would have been jeopardized by delay. Therefore, the jeopardy
21   assessment against Plaintiffs was reasonable under the circumstances.

22   ///

---

[4] Wadman attaches letters from a charity called Charity Network Foundation (Dkt. 98). Wadman alleges he made cash donations to this organization (DSOF ¶ 60). However, the Government asserts that Charity Network Foundation has not identified itself as a charitable or religious organization under Section 501(c)(3) of the Internal Revenue Code (Dkt. 66, Decl. of Karen Bloxham ¶ 14). Furthermore, IRS records indicate that Wadman requested the EIN for Charity Network Foundation (Id.). Therefore, the Government alleges Wadman formed Charity Network Foundation and used it as another nominee (DSOF ¶ 60).

### C.     Alter Egos

The Government contends that Golden West and Tri-Star are merely Wadman's alter egos. Therefore, the Government contends they lack standing to file this action. The Government presents the sworn affidavit of Calvin Byrd, an IRS Officer who investigated this case (Dkt. 66, Decl. of Calvin Byrd). Mr. Byrd makes compelling allegations that, among other things, Wadman frequently transferred the same funds between Golden West, Tri-Star, Atlantic, himself, and a person named Philip R. Black – who coincidentally shares the same surname as one of Wadman's prior aliases, Sean G. Black (Id. ¶¶ 6-10). The Government asserts the commingling of funds demonstrates that Golden West and Tri-Star are Wadman's alter egos, established solely for his benefit and to conceal his assets.

Alternatively, the Government argues that if Golden West and Tri-Star are valid trusts, then Wadman cannot represent them as they require counsel. Because the Court has already determined the reasonableness of the jeopardy assessment, the Court declines to determine whether the entities are Wadman's alter egos under the law. The Court only notes that the erratic financial activity between Wadman and the entities is further justification that the jeopardy assessment against Plaintiffs was reasonable under the circumstances. See Guillaume, 290 F. Supp. 2d at 1354.

### D.     Statutory Notice

In their Amended Complaint, Plaintiffs also challenged the levies as void due to the IRS's failure: (1) to mail a Statutory Notice of Deficiency to Plaintiff Wadman as required by 26 U.S.C. § 6212 within 60 days of making the jeopardy assessment, and (2) to provide a Written Statement of the information relied upon in making the assessment within 5 days as required by 26 U.S.C. § 7429  (Am. Compl. ¶¶ 11-16). Plaintiffs requested relief in the form of an order declaring the jeopardy assessment invalid and void, and an order enjoining the Government from levying upon or seizing Plaintiffs' assets in the future (Id. at 7).

1    If the IRS does not provide notice, the statute does not automatically void the
2 jeopardy assessment. The statute limits the district court's summary review to the issues of
3 reasonableness and appropriateness. 26 U.S.C. § 7429(b)(3). However, there is some
4 authority stating that the failure to give notice may be fatal to the jeopardy assessment. See
5 e.g., Perlowin v. Sassi, 711 F.2d 910, 911 (9th Cir. 1983). If a court finds an assessment
6 improper, though, injunctive relief is not mandatory. Id. at 912. "Along with a showing of
7 improper assessment, the taxpayer must prove irreparable injury and an absence of an
8 adequate legal remedy" in order to obtain injunctive relief. Id.; see Latch v. United States,
9 842 F.2d 1031 (9th Cir. 1988) (district court may not consider suit that seeks to enjoin
10 collection or assessment of federal taxes unless it is clear that under no circumstances could
11 the Government prevail and equity jurisdiction otherwise exists); Cool Fuel, Inc. v. Connett,
12 685 F.2d 309 (9th Cir. 1982) (taxpayer not entitled to injunctive relief based on showing
13 alone that assessment had been made prior to valid notice of deficiency, and taxpayer must
14 show usual equitable prerequisites). The statute also provides the court with various options
15 for relief, including the abatement or redetermination of the assessment, or the taking of such
16 action as the court finds appropriate. 26 U.S.C. § 7429(b)(4).

17    The parties do not dispute that the IRS made the jeopardy assessment without prior
18 notice to Plaintiffs. Therefore, the IRS should have given notice within 60 days and provided
19 a written statement of the information it relied upon within 5 days of making the assessment.
20 However, the parties do not clearly address whether the IRS provided proper statutory notice.
21 Although Plaintiffs alleged in their Amended Complaint that the IRS did not provide notice
22 (Am. Compl. ¶ 15), Plaintiffs do not address that issue again. The Government also does not
23 address whether it provided proper notice in its motion for summary judgment. The
24 Government notes that a taxpayer may seek administrative review within 30 days after the
25 IRS furnished a Written Statement (Dkt. 66, 4:10-14). The Government then simply states
26 that Wadman sought administrative review within 30 days, and the administrative review
27 sustained the collection action (Id. at 4:14-15).
28

As noted, the Court has already determined that the jeopardy assessment was reasonable under the circumstances. Even if the Court determined that the lack of notice rendered the assessment fatal, Plaintiffs have not proven "irreparable injury and an absence of an adequate legal remedy" in order to obtain injunctive relief, as will be discussed below. Perlowin, 711 F.2d at 912. Furthermore, the Court has discretion to take such action as the Court finds appropriate. See 26 U.S.C. § 7429(b)(4). The Court could not have considered an injunction because the Court already determined it lacked jurisdiction to grant such relief (Dkt. 35, Order signed December 15, 2006). After the Government previously moved to dismiss, the Court made this determination and dismissed that portion of Plaintiffs' Amended Complaint (Id.). The Court reached this ruling on the merits and because Plaintiffs did not respond to the Government's motion to dismiss (Id.). Therefore, Plaintiffs are not entitled to injunctive relief.

In taking appropriate action, if the Court had made its reasonableness determination within the twenty-day period as contemplated by the statute, the Court in its discretion could have simply ordered the IRS to provide proper statutory notice. See 26 U.S.C. § 7429(b)(4). Congress recognized the hardships that may result from a jeopardy assessment. Mesher, 736 F. Supp. at 235 (citing 26 U.S.C. § 7429(b)). Therefore, it provided taxpayers the opportunity to obtain summary review by a federal district court within twenty days. Id. Though, what should have been a twenty-day proceeding has spun into a nearly four year proceeding, and the delay of this action can be primarily attributed to Plaintiffs. Plaintiffs' numerous withdrawals of counsel and own behavior have derailed the summary nature of this proceeding.

Moreover, even if the Court enforced the statutory notice requirement, the notice would have simply enabled Plaintiff to challenge the assessment in Tax Court. Since filing this action, though, Wadman filed for Chapter 11 bankruptcy (PRSOF ¶ 4). If the taxpayer is involved in a bankruptcy proceeding at the time the deficiency notice is mailed, then the taxpayer is prohibited from filing a petition in Tax Court during the pendency of the Chapter

- 15 -

1   11 proceedings. 11 U.S.C. § 362(a)(8). Wadman is contesting the merits of the tax
2   assessments in Bankruptcy Court (Dkt. 89, 4:17-19). On May 30, 2007, Wadman objected
3   to the IRS's proof of claim containing the jeopardy assessments (Id. at 4:20-22). The
4   Bankruptcy Court has jurisdiction to "determine the amount or legality of any tax, any fine
5   or penalty relating to a tax, or any addition to tax, whether or not previously assessed,
6   whether or not paid, and whether or not contested before and adjudicated by a judicial or
7   administrative tribunal of competent jurisdiction." See Am. Principals Leasing Corp. v.
8   United States, 904 F.2d 477, 480-81 (9th Cir. 1990) (citing 11 U.S.C. § 505(a)(1)).
9   Therefore, even if statutory notice allowed Wadman to bring an action in Tax Court, the
10  bankruptcy proceedings would most likely supersede the tax proceedings. See 11 U.S.C.A.
11  § 362(a)(8).

12  Furthermore, some of the seized property at issue before this Court is no longer
13  actually before this Court. In this Court, the parties have *twice* stipulated to a sale of the
14  seized property at issue. The parties further stipulated that the Court send the sale proceeds
15  to Wadman's bankruptcy counsel for holding, pending further order of the Bankruptcy Court
16  (Dkts. 51-52, 59-63). Therefore, the Court cannot return this property. As Wadman is
17  challenging the tax assessment in Bankruptcy Court, Wadman is not without a remedy, and
18  the notice issue seems moot. See Perlowin, 711 F.2d at 912 ("Along with a showing of
19  improper assessment, the taxpayer must prove irreparable injury and an absence of an
20  adequate legal remedy."); see also Roat v. C.I.R., 847 F.2d 1379, 1383 (9th Cir. 1988)
21  (holding that taxpayer could not enjoin the IRS from assessing deficiencies when the IRS
22  prevailed on issue of whether determinations were lawful and taxpayers had adequate legal
23  remedies available).

24  **II.     Motion for Reconsideration**

25
26  Finally, the Government requests the Court reconsider its earlier decision allowing
27  Wachovia to intervene. The Government contends that the Supreme Court's interim decision
28  in EC Term of Years Trust v. United States, 550 U.S. 429 (2007), overruled the basis for the

- 16 -

Court allowing Wachovia's intervention, <u>United States v. Williams</u>, 514 U.S. 527. The Court notes that Wachovia is also pursuing relief in Bankruptcy Court. As the Court has determined the jeopardy assessment as reasonable under the circumstances, the Court will deny the pending motion for reconsideration as moot. <u>See</u> <u>Guillaume</u>, 290 F. Supp. 2d at 1356.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Enjoin [sic] Wachovia Bank's Response to the Government's Motion for Summary Judgment (Dkt. 95) is **GRANTED**.

**IT IS FURTHER ORDERED** that the making of the jeopardy assessment is reasonable under the circumstances pursuant to 26 U.S.C. § 7429.

**IT IS FURTHER ORDERED** that the Government's Motion for Summary Judgment (Dkt. 66) and Motion for Reconsideration of Order Granting Intervention (Dkt. 74) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Complaint (Dkt. 21) is **DISMISSED**, and the Clerk of Court shall terminate this matter (CV 05-2237, 05-2238, and 05-2239).

DATED this 21st day of May, 2009.

Stephen M. McNamee
United States District Judge